824 F.2d 324
 Carlton Eugene KING, Plaintiff-Appellant,
v.
Robert O. JONES; Charles Wade; Bryant Bibb; Roy
Fitzgerald; Richard Hudson; and unknown named
agents of the Charlottesville City
Police Department, Defendants-Appellees.
 No. 86-2160.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 5, 1987.
Decided July 30, 1987.
 
 Deborah C. Wyatt (Gordon & Wyatt on brief), for plaintiff-appellant.
 Jay T. Swett (R. Craig Wood; McGuire, Woods, Battle & Boothe on brief), for defendants-appellees.
 Before SPROUSE, and CHAPMAN, Circuit Judges, and WISDOM, Circuit Judge for the Fifth Circuit, sitting by designation.
 CHAPMAN, Circuit Judge:
 
 
 1
 Appellant Carlton King appeals from various rulings of the district court in his suit against several police officers under 42 U.S.C.A. Sec. 1983 (1981). The trial judge granted a directed verdict for defendants on two issues, and the jury found for defendants on the issues submitted to it. King contends that the district court erred in conducting the voir dire during selection of the jury, in dismissing his claim that he had a right to a public face-to-face appearance before a magistrate for a probable cause determination immediately following his arrest, and in failing to properly charge the jury regarding probable cause and punitive damages. We hold that the questions allegedly omitted from the voir dire were not properly submitted and that this issue was not preserved for appeal. We hold that in this case there existed no right to a face-to-face meeting with the magistrate regarding probable cause. Finally, the issue of the charge on punitive damages is moot because the jury found for the defendants on every issue.
 
 
 2
 * The instant action is the result of an incident which occurred between the appellant and several police officers on a spring night in May 1984, when appellant was walking down Main Street in Charlottesville, Virginia with his wife and sister-in-law. A group of police officers were posted on a "drunk driving" road block. After someone in King's group tampered with some flares on the side of the road, the police officers seized King and arrested him for public drunkenness. He was placed in the paddywagon and taken to the magistrate's office where a warrant was issued for his arrest. It is unclear whether the magistrate ever observed King face-to-face during the probable cause determination. The magistrate testified that he went out to the van and looked in at King who was creating quite a disturbance and was obviously drunk. King's wife, however, testified that she was in the magistrate's office and never saw the magistrate leave the office. King was placed in jail to sober up. Following his release from jail, King discovered he had a broken leg.
 
 
 3
 King brought this action pursuant to 42 U.S.C.A. Sec. 1983 charging violations of his constitutional rights. In general, King alleged that his rights had been violated because he was unlawfully seized and mistreated, arrested without probable cause, his leg was broken as a result of police brutality, and he was incarcerated by the magistrate without a proper probable cause determination, and that he was entitled to immediate release.
 
 
 4
 Before trial, the parties were requested to submit proposed questions for voir dire of the jury. King's counsel, apparently believing that she would have the right to personally conduct voir dire, had prepared four pages containing 90 proposed questions. These questions were argumentative in nature and because they were prepared for use by the attorney, their syntax was not of use to the court without substantial revision. The district judge refused to propound these questions to the jury venire and referred to them as "California questions". The record indicates that King's attorney had the opportunity to object to the district court's ruling on these questions, but she did not do so.
 
 
 5
 At the conclusion of the evidence, the court directed a verdict against King on his claims that his right to an appearance before a magistrate had been denied and that he was entitled to immediate release. The trial court then charged the jury, which returned a verdict for defendants on all claims. This appeal followed.
 
 II
 
 6
 "The essential function of voir dire is to allow for the impaneling of a fair and impartial jury through questions which permit the intelligent exercise of challenges by counsel." U.S. v. Brown, 799 F.2d 134 (4th Cir.1986). While the district court has broad discretion in conducting voir dire, an abuse of that discretion occurs where the court's restriction hinders a defendant's opportunity to make reasonable use of his challenges. In United States v. Brown, supra, we reemphasized the importance of voir dire, and found that the district court abused its discretion in refusing to ask prospective jurors if they knew any of the witnesses, and in failing to read the list of witnesses to the jury. 799 F.2d at 136. In suits alleging violations of Sec. 1983 by police officers, the district court should ask questions similar to some of those suggested by King's attorney regarding the attitudes of the prospective jurors on the issues of police credibility and charges of police misconduct. See United States v. Baldwin, 607 F.2d 1295 (9th Cir.1979).
 
 
 7
 The case at hand is, however, unique. King's counsel did not present the district judge with a list of objective questions for the judge to ask the jury venire. Rather, King's counsel submitted four pages of argumentative questions which she had intended to use in conducting voir dire herself. In oral argument, King's counsel stated that she was not familiar with the federal court rule that all voir dire is handled by the district judge. While these four pages of potential questions contained the questions King now contends the trial court improperly refused, they also contained many questions which were simply not necessary to a proper voir dire. Appellant's attorney did not advise the trial judge as to which of the 90 proposed questions were necessary to her exercise of jury challenges.
 
 
 8
 Under Fed.R.Civ.P. 46, a party must make known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefore. If there are particular voir dire questions which counsel deems essential, and that refusal to ask them may be reversible error, counsel must so advise the court, and state his reasons before the court's voir dire of the prospective jurors is completed. Otherwise, counsel's long lists of questions may be a trap for an unwary judge, particularly when counsel has not given the judge a fair chance to avoid error by calling attention to the essential questions that must be asked. See United States v. Blosvern, 514 F.2d 387, 389 (9th Cir.1975) (court declined to consider claims of error when defendants' counsel offered a list of eighteen questions to the trial court, but failed to object when the questions were not all read.) Because King's counsel failed to make a timely objection when the judge did not ask the questions she did not preserve this issue, and the appeal on this issue must fail.
 
 III
 
 9
 King next contends that he was entitled to a face-to-face appearance before the magistrate to determine whether there was probable cause for his arrest. There is some ambiguity in the evidence as to whether the magistrate actually saw King. The district court held that the magistrate had sufficient evidence to issue a warrant based on probable cause by listening to reports of King's arrest on the police scanner and from the testimony of the arresting officer at his office. The district court also rejected King's claim that he had a right to a face-to-face meeting with the magistrate.
 
 
 10
 The Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest. This determination does not involve any adversarial rights, and can be based entirely on hearsay and written testimony. The Supreme Court has repeatedly endorsed these informal methods of proof as sufficient to create probable cause for arrest. See Gerstein v. Pugh, 420 U.S. 103, 114, 120, 95 S.Ct. 854, 863, 866, 43 L.Ed.2d 54 (1975). In Gerstein v. Pugh, the Supreme Court sought to put persons arrested without a warrant on the same footing as those arrested under a previously issued warrant. Thus, it required a post-arrest judicial determination of probable cause in cases of warrantless arrests. 420 U.S. at 114, 95 S.Ct. at 863. The process required by the court is one that would not allow arrest unless a judicial determination of probable cause was made "either before or promptly after arrest." 420 U.S. at 125, 95 S.Ct. at 869.
 
 
 11
 The post-arrest Gerstein v. Pugh hearing is required to fulfill the same function for suspects arrested without warrants as the pre-arrest probable cause hearing fulfills for suspects arrested with warrants. One who has had an arrest warrant issued before his arrest has had no opportunity to appear physically before the issuing magistrate during the probable cause determination. There is likewise no reason to require such an appearance at the post-arrest probable cause determination.
 
 
 12
 Because King had no right to a face-to-face appearance before the magistrate during the probable cause determination, the district court was correct in directing a verdict for defendants on this claim.
 
 IV
 
 13
 Finally, King contends that the district court erred in refusing a punitive damages instruction based upon reckless and intentional conduct by the defendant police officers. Although the trial judge probably should have charged the jury on punitive damages, the jury found for the defendants on every issue, thereby finding no actual damages, so the issue of punitive damages is now moot. Jordan v. Medley, 711 F.2d 211, 216 (D.C.Cir.1983) (an award of punitive damages is impermissible without valid basis for compensatory damages); see also, United States v. Snepp, 595 F.2d 926, (4th Cir.1979), rev'd on other grounds, 444 U.S. 507, 100 S.Ct. 763, 62 L.Ed.2d 704, reh'g denied, 445 U.S. 972, 100 S.Ct. 1668, 64 L.Ed.2d 250, 251 (1980).
 
 
 14
 We have reviewed the appellant's other contentions and find them to be equally without merit. The decision of the district court is
 
 
 15
 AFFIRMED.